UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:18-CV-00308-DJH-LLK

CHRISTOPHER CLAYTON                                                         PLAINTIFF

v.

TRI CITY ACCEPTANCE, INC. *et al*                                   DEFENDANTS

## OPINION AND ORDER

Judge David J. Hale referred this matter to Magistrate Judge Lanny King for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. (Docket # 4). This matter is before the Court on Defendant Trans Union, LLC's (hereinafter "Trans Union") Motion for Protective Order. (Docket # 31). Plaintiff Christopher Clayton has filed a Response (Docket # 39) and Trans Union has filed a Reply. (Docket # 41). This matter is ripe for adjudication.

For the reasons detailed below, Trans Union's Motion for Protective Order is **GRANTED IN PART AND DENIED IN PART**. (Docket # 31).

**Factual and Procedural History**

On May 8, 2018, Plaintiff filed this suit in Jefferson Circuit Court, alleging Trans Union violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (Docket # 1-2 at 6-7). The suit stems from a request by Defendant Tri-City Acceptance for Plaintiff's Trans Union consumer report. (Id. at 4). Plaintiff alleges that Trans Union violated 15 U.S.C. § 1681b(a) by "furnishing the consumer report to a person it knew or should have known did not have a permissible purpose to use the information." (Docket # 39 at 2).

Discovery began and Plaintiff requested several documents from Defendant Trans Union. Three requested categories of documents are the subject of this Motion: (1) Trans Union's "Journal 20" Records[1]; (2) Trans Union subscriber agreement with Defendant Tri City Acceptance, Inc. (hereinafter "Tri City"); and (3) Trans Union's FRCA compliance procedures and policies. (Docket # 31 at 3). Defendant believes these documents are not relevant to the case at hand but has agreed to produce them if Plaintiff agrees to maintain confidentiality regarding the documents, or if the Court enters a stipulated protective order. (Id.). Plaintiff has refused these terms.

On July 23, 2019, the Court held a telephonic status conference, during which the parties brought this dispute to the Court's attention. (Docket # 26). The Court granted leave for Defendant to file its Motion for Protective Order (Docket # 31).

**Legal Standard**

*Relevance Standard*

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." FED. R. CIV. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)). However, the scope of discovery is not unlimited. "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the

---

[1] Trans Union asserts that it does not maintain "Journal 20" records, but it internally refers to such information as "Online Input and Output Logs" which are essentially Trans Union's term for such records.

burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Id. (quoting FED. R. CIV. P. 26(b)(2)(C)(iii)). The determination of "the scope of discovery is within the sound discretion of the trial court." Cooper v. Bower, No. 5:15-CV-249-TBR, 2018 WL 663002 at *1 (W.D. Ky. Jan. 29, 2018), *reconsideration denied*, 2018 WL 1456940 (W.D. Ky. Mar. 22, 2018) (quoting Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981)).

*Standard for Entry of Protective Orders*

Federal Rule of Civil Procedure 26(c)(1)(G) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, by requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. Thus, to satisfy Federal Rule of Civil Procedure 26(c)(1)(G), the movant must show that: (1) the interest for which the protection is sought is an actual trade secret or other confidential business information that is protected under the rule; and (2) there is good cause for the entry of the protective order. Borum v. Smith, No. 4:17-CV-00017-JHM, 2017 WL 2588433, at *1-2 (W.D. Ky. June 14, 2017) (*citing* Mitchell v. Home Depot U.S.A., Case No. 3:11-CV-332, 2012 WL 2192279, at *2 (W.D. Ky. June 14, 2013).

Generally, "pretrial-discovery proceedings are conducted in public unless compelling reasons exist to deny access." Waelde v. Merck, Sharp & Dohme, 94 F.R.D. 27, 28 (E.D. Mich. 1981).[2] Federal Rule of Civil Procedure 26(c) allows the Court to enter a protective order "for

---

[2] Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has a heavy burden to show substantial justification for withholding information from the public.

good cause shown" to protect a party's information from the public eye or shield it to the point that disclosure may only occur in a proscribed manner. When a business seeks the protection of trade secrets or confidential information under this rule, it must show that disclosure would cause "clearly defined and very serious injury." Id. "[V]ague and conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make 'a particularized showing that the information sought is confidential' and come forth with 'specific examples' of competitive harm." Id. (*quoting* Parsons v. General Motors Corp., 85 F.R.D. 724, 726 (N.D. Ga. 1980)).

To demonstrate an entitlement to protection, a party must identify a particular document and connect disclosure of that document to a specific negative economic repercussion. *See* Ingalsbe v. Henderson Health Facilities, L.P., No. 4:16-CV-00070-JHM, 2017 WL 1147492, at *2-3 (W.D. Ky. March 27, 2017. Owens v. Liberty Life Assur. Co., 4:15-CV-00071-JHM-HBB, 2016 WL 7238816, at *3-4 (W.D. Ky. Dec. 14, 2016).

**Analysis**

Trans Union seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c) as to: 1) its record capturing report request information stored on its internally developed computer programs (Trans Union refers to them as "OIOL", and Clayton refers to them as "Journal 20" records); 2) Trans Union's unredacted subscriber agreement with Tri City; and 3) Trans Union's internal policy and procedure manuals.

---

*See* Williams v. Baptist Healthcare Sys. Inc., Civil Action No. 3:16-CV-00236-CRS, 2018 WL 989546, at *2 (W.D. Ky. Feb. 20, 2018); *see also*, Proctor & Gamble Co. v. Banker's Trust Co., 78 F.3d 219, 227 (6th Cir. 1996) ("While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and is circumscribed by a long-established tradition which values public access to court proceedings."); Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 162 (6th Cir. 1987) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying public access to the proceedings.").

I. The "Journal 20" or "OIOL" Records

Trans Union seeks a protective order covering what Plaintiff refers to as its "Journal 20" records, and what it internally refers to as its "OIOL" records. These records "consist of the data stored confidentially on [Trans Union's] confidentially internally developed and maintained computer programs and show the internal mechanisms, processes and data which comprise those systems. (Docket #31-1 at 1; Docket # 31 at 6). Trans Union states that this program and the methods by which it stores data about consumers "is unique to Trans Union, and therefore invaluable to its ability to gain a competitive advantage in the highly competitive credit reporting industry." (Id.).

Trans Union presents two arguments for production of these records under the auspices of a protective order. First, Trans Union argues that only production of the records pertaining to the instance of access to Clayton's credit report are relevant, as only Clayton's claims are part of this litigation. Second, Trans Union argues that production of the program documents would necessarily entail information about its proprietary algorithms and other search techniques. By producing this information without a protective order, the records could be transmitted to Trans Union's competitors and allow them "unlimited access to highly confidential information that goes to the heart of Trans Union's business." (Docket # 31 at 7).

Plaintiff counters that there is no need for a protective order as to these records, as they are not confidential or trade secret. (Docket # 39 at 5). The Plaintiff describes these records as "nothing more than an audit trail, or a detailed report, of an inquiry on a credit report."[3] (Id.). He

---

[3] To support this proposition, Plaintiff cites a deposition from a case in the U.S. District Court for the Eastern District of Michigan, containing testimony from a former employee of Trans Union. (Docket # 39 at 5, fn 2). However, this deposition was never filed into the record, meaning there is no way to verify its accuracy.

argues that "[n]either the consumer's data nor the form of that data gives Trans Union a competitive advantage in the market." (Id.). Finally, Plaintiff contends that Trans Union has not pointed out a specific harm that it would suffer by production absent a protective order. (Id. at 6).

The Court finds that the "Journal 20" or "OIOL" records depicting access to Plaintiff's information are relevant, but that they should be produced subject to a protective order. As an initial matter, the records are likely relevant, as they detail information pertaining to the access and maintenance of Plaintiff's credit information in the hands of Trans Union, as well as to its transmittal to Defendant Tri City.

Trans Union has shown that the information is "an actual trade secret or confidential business information." Id. Trans Union has provided a sworn declaration of Daniel Halvorsen, who has attested to the confidential nature of the reporting records and software, as well as the algorithms behind maintenance of the data. (Docket # 31-1). Mr. Halvorsen's declaration describes the information is sensitive and confidential. However, Mr. Halvorsen's contentions alone do categorize the information as "trade secret".

The KUTSA, KRS 365.880(4), defines a "trade secret" as "information, including a formula, pattern, compilation, program, data, device, method, technique or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." KRS 365.880(4).

Based on a common-sense interpretation, the records fall within this categorization. They are programs that contain and use data, formulas, and information to store, process, and maintain records of the credit information of individuals. As described in Mr. Halvorsen's declaration,

this information would be highly valuable to competitors of Trans Union. (Docket # 31-1 at 3). Further, Mr. Halvorsen states that Trans Union strictly controls access to the program to maintain its confidentiality, and that it has invested serious time, effort, and resources into development and maintenance of the program, as is common in the credit reporting industry. (Id. at 2-3). Given these facts, the Court finds that the program is a "trade secret."

The second question is whether the Defendant has presented good cause for entry of a protective order. The Court finds that Trans Union has met that burden. Defendant has made "a particularized showing that the information sought is confidential [and has] come forth with 'specific examples' of competitive harm." Mitchell v. Home Depot U.S.A., No. 3:11-CV-332, 2012 WL 2192279, at *2 (W.D. Ky. June 14, 2012) (*citing* Waelde v. Merck, Sharpe, & Dohme, 94 F.R.D. 27, 28 (E.D. Mich. 1981)) (*quoting* Parsons v. General Motors Corp., 85 F.R.D. 724, 726 (N.D. Ga. 1980)). This information could "permit Trans Union's competitors unlimited access to highly confidential information that goes to the heart of Trans Union's business." (Docket # 31 at 7). This would include the ability to "duplicate Trans Union policies and procedures and business contracts to improve their own agencies' [referring to competitors] operation, reputation, and ability to attract customers, all to Trans Union's detriment." (Docket # 31-1 at 4). In addition to the competitive harm, the unprotected disclosure of this information could lead to improper access to Trans Union's databases. (Id.).

Plaintiff provides no authority to refute these contentions.[4] Instead, Plaintiff asserts that he is entitled to the information, that no trade secrets would be disclosed, and that no good cause

---

[4] Plaintiff cites to a deposition of a former Trans Union employee taken in a case filed in the Eastern District of Michigan in 2003. However, the Plaintiff does not cite a formal transcript, nor does the Court find that the transcript was ever filed into the record. Instead, the Plaintiff cites to a forum style website via hyperlink. Without a more proper citation to authority that reflects more positively on the veracity of the source, the Court will disregard the information and assertions it contains.

7

exists, as Defendant has not provided specific injuries which it would suffer. (Docket # 39). The Plaintiff is entitled to this information, as it is relevant under Federal Rule of Civil Procedure 26. However, the rest of Plaintiff's bare assertions, absent binding authority, do nothing to refute Trans Union's arguments.

Trans Union's Motion for Protective Order as relates to the production of "Journal 20" or "OIOL" records is **GRANTED**. Trans Union shall produce the "Journal 20" or "OIOL" records pertaining to Plaintiff's credit report subject to a protective order restricting use of the documents to this litigation.

## II. Trans Union's Subscriber Agreement with Tri City

Trans Union seeks a protective order for the subscriber agreement for services provided to Tri City. (Docket # 31 at 7). Trans Union describes this agreement as "confidentially developed, negotiated, and maintained" with Tri City. Trans Union further states that this agreement is not identical when compared to others it has negotiated, specifically, as to "the monetary terms the two companies agreed to in exchange for Trans Union to report Tri City's information." (Id.). Trans Union also argues that it has produced the relevant portions of the document at Plaintiff's request, specifically, as relates to its provision governing the permissible purposes for requesting a consumer's credit score, while redacting any portion that "implicates Trans Union's business practices and strategies, including pricing." (Id.). Again, Trans Union supports its assertions with the declaration of Mr. Halvorsen. (*see generally*, Docket # 31-1).

Plaintiff contends that Trans Union "does not factually support its argument that is subscriber agreement with Tri City is confidential or that disclosing the agreement would cause Trans Union competitive harm." (Docket # 39 at 4). Plaintiff argues that Trans Union does not provide a specific harm that it would suffer from disclosure of the agreement, which was entered

8

into in 1998. (Id. at 5). Further, Plaintiff asserts that nothing in the agreement is confidential or trade secret, meaning no good cause for entry of a protective order exists. (Id.).

The Court finds that entry of a protective order is proper. Again, the Court finds this Subscriber Agreement to be broadly relevant, as it may speak to the arrangement by which Trans Union produced Mr. Clayton's credit report to Tri City.

Here, Trans Union's subscriber agreement, specifically, the pricing information it contains, are entitled to production under a protective order. Courts have long found it appropriate to limit access to closely held information, particularly if that information can cause harm to a party's business. *See* Liberty Folder v. Curtiss Anthony Corp., 90 F.R.D. 80 (S.D. Ohio 1981) (holding that entry of a protective order was proper to avoid harmful disclosure of sensitive information). The federal courts have a long history of allowing entry of protective orders for unique, sensitive business information that, if disclosed, could harm a party's business positions. *See e.g,* Nutratech, Inc. v. Syntech Intern., Inc., 242 F.R.D. 552 (C.D.Cal.2007) (customer and supplier list and sales and revenue information qualifies as confidential commercial information); Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D.Pa.1994) (information that reflects corporation's price competitiveness in market constitutes confidential commercial information); Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297 (N.D.Ill.1993)(recognizing that formulae and marketing strategy are entitled to protection); Russ Stonier, Inc. v. Droz Wood Co., 52 F.R.D. 232 (E.D.Pa.1971) (customer and supplier list qualify as confidential commercial information).

The pricing information contained in the subscriber agreement with Tri City, for which Trans Union seeks protection, fits the same mold. The Court finds good cause for entry of a protective order for such confidential commercial information.

Defendant Trans Union's Motion for Protective Order as to its Subscriber Agreement with Tri City is **GRANTED**. (Docket # 31). Trans Union shall produce its Subscriber Agreement with Tri City subject to a protective order restricting use of the documents to this litigation.

### III. Trans Union's FCRA Compliance Policy and Procedure Manuals

Trans Union seeks a protective order for its "confidential policy and procedure manuals." (Docket # 31 at 8). Trans Union states that these policies and procedures are "unique" and that it "has expended considerable time, expense and effort to create them." (Docket # 31 at 9; *see also* Docket # 31-1 at 3). Trans Union further asserts that "All Trans Union policies and procedures are kept confidential because disclosure would by necessity cause competitive harm." (Id.).

Plaintiff responds that a protective order is not necessary, stating that the policies are not trade secret or confidential. (Docket # 39 at 6). Plaintiff contends that Trans Union is "legally required to maintain these policies to comply with its obligations under the FCRA, including Section 1681e(a)." (Id.). Further, Plaintiff alleges that "there can be little doubt that such policies and procedures are generally known to Trans Union's competitors" and that "Trans Union presumably will rely on said policies in defense of Mr. Clayton's claims." (Id.).

As an initial matter, this information is relevant to the claims brought by Plaintiff. The suit centers on an unlawful disclosure of Plaintiff's credit report by Trans Union at the behest of Tri City and Byrd. Trans Union's policies and procedures regarding disclosure of this information are relevant to these claims.

The Court agrees with Plaintiff, a protective order is not warranted. Much like the situation in Mitchell, these documents do not contain trade secrets, nor does the Court find anything unique or distinctive about the procedures at issue. Additionally, the Court cannot

discern "clearly defined and very serious injury" Trans Union would suffer. Mitchell, 2012 WL 2192279, at *5 (*citing* Waelde, 94 F.R.D. at 28).

Trans Union contends that this information (and indeed, all the documents included in its Motion for Protective Order) are protected, as they are "confidentially and internally-developed procedures, which [Trans Union] has a true and obvious interest in maintaining." (Docket # 31 at 9; Docket # 31-1 at 3).

Trans Union cites Ingalsbe to support its assertion. (Docket # 31 at 9). However, Ingalsbe is distinguishable. In Ingalsbe, the court held that that disclosure of a defendant hospital's "employee personal files; contracts with service providers; training and attendance records; company policies, procedures, and guidelines; compensation structures; cost reports; and ... documentation regarding [a patient's] residency at the facility" were entitled to a protective order. Ingalsbe, 2017 WL 1147492, at *2. The court determined that public dissemination this information could lead to several adverse impacts, including: (1) providing the hospital's competitors with an advantage; (2) exposing the hospital to lawsuits from current and former employees; and (3) exposing the hospital to the risk of federal and/or state fines. Id.

Trans Union does not face any of the same risks of harm in this case. Trans Union only states that it would "likely have a serious adverse impact on Trans Union's financial and business positions within the credit reporting market and Trans Union would lose the value of significant resources used to develop such materials." (Docket # 31 at 9-10). This statement does not present the "specific and concrete harm" as was present in Ingalsbe, to justify entry of a protective order. *See also* Williams v. Baptist Healthcare Sys. Inc., 2018 WL 989546, at *4.

The Court finds the situation at hand to be similar to the facts present in Mitchell. Therein, Judge Russell found that the safety procedures and methodologies contained in the

standard operating procedures of the defendant were not entitled to a protective order under rule 26(c). Mitchell, 2012 WL 2192279, at *5. The Court reasoned that documents do not contain trade secrets, simply because they are labeled as confidential. Id. Additionally, the Court noted that "significant time and expense in developing policies" that "public dissemination would allow competitors to duplicate" did not serve as proper grounds for entry of a protective order under Rule 26(c). Id. *See also* Motto v. Correctional Medical Services, 2009 WL 347432 (S.D. W. Va. Feb. 9, 2009) (*citing* Braack v. Home Depot U.S.A., Inc., 2007 WL 2156371 (W.D. Wash. July 23, 2007) and Zahran v. Trans Union Corp., 2002 WL 31010822 (N.D. Ill. Sept. 9, 2002) (holding that credit reporting agency's consumer relations policy for handling consumer disputes did not constitute trade secret or other confidential business information). The situation at bar is analogous.

Trans Union's Motion for Protective Order as to its FCRA Compliance Policy and Procedure Manuals is **DENIED.** (Docket # 31).

### Conclusion

For the reasons discussed above, Defendant Trans Union, LLC's Motion for Protective Order (Docket # 31) is **GRANTED IN PART AND DENIED IN PART**. Within 30 days of entry of this Order, the parties shall tender an agreed protective order that applies only to the documents addressed in this Order, prohibits use of the documents for any purpose other than this litigation, and otherwise conforms with this opinion and rules of the Court. If the parties are unable to reach an agreement, Trans Union shall contact Magistrate Judge King's office to schedule a status conference.

October 24, 2019

**Lanny King, Magistrate Judge**
**United States District Court**