UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:18-CV-00308-DJH-LLK

CHRISTOPHER CLAYTON                PLAINTIFF

v.

TRI CITY ACCEPTANCE, INC. *et al*            DEFENDANTS

## **OPINION AND ORDER**

Judge David J. Hale referred this matter to Magistrate Judge Lanny King for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. (Docket # 4).

On September 16, 2019, Judge King conducted a telephonic status conference in this case regarding multiple discovery disputes. (Docket # 43). On September 20, 2019, Plaintiff Christopher Clayton filed a Motion to Compel Production of November 9, 2017 Email. (Docket # 45). Defendants Tri City Acceptance and Betty Byrd filed a Response on October 4, 2019. (Docket # 47). Fully briefed, this matter is now ripe for adjudication.

For the reasons discussed below, the Motion to Compel (Docket # 45) is **DENIED**.

### **Background**

This matter arises out of a suit, filed originally by Plaintiff Clayton in Jefferson County Circuit Court, and later removed to this Court. Plaintiff alleges Defendants Tri City and Byrd "unreasonably intruded upon [his] privacy and seclusion" when they "divulge[ed] [his] private financial and credit information to third[]parties . . . and the public at large [] by providing a copy of [his] Trans Union report during [Byrd's] deposition and testifying about the contents of the credit report on the record." (Docket # 7 at 3). He further alleges that Defendants obtained and

1

used the report without a permissible purpose with a willful, or at least negligent, state of mind, creating noncompliance with the FRCA, 15 U.S.C. §§ 1681b, 1681n, and 1681o. (Id., at 4-5).

On August 26, 2019, Defendant Byrd was deposed by Plaintiff. (Docket # 45 at 2). At this deposition, Byrd was questioned regarding her reasons for pulling Plaintiff's credit report. (Id.; Docket # 47 at 3). The disagreements begin here. Plaintiff alleges that Byrd testified that she pulled the credit report "following the 'instructions' of Allan Cobb, an attorney for Turner, Coombs & Malone"[1] and that "she learned of Mr. Cobb's request through Jason Hardin." (Docket # 45 at 2). Defendants allege that Plaintiff has engaged in "cherry-picking" of the deposition testimony, and that Byrd's reasons for pulling the credit report were threefold: (1) she was noticed for a deposition and threatened with a subpoena for the credit report in the underlying litigation; (2) she was curious as to why she was being called as a witness in the underlying litigation; and (3) she wanted to be prepared for her testimony. (Docket # 47 at 2-4; Docket # 47-1 at 2; Docket # 47-2).

Following the deposition, Plaintiff requested a copy of an email from November 7, 2017[2] sent by Hardin to Byrd. (Docket # 45 at 3). Plaintiff believes this email from Hardin contained "instruction to pull [Plaintiff's] credit report." (Id. at 2). Plaintiff cites Byrd's deposition for support. Additionally, Plaintiff states that "On or about November 7, 2017, at 12:41 p.m., Ms. Byrd created an entry in the collection notes system that she received an email form Jason Hardin inquiring about Mr. Clayton's credit report. She pulled Mr. Clayton's Trans Union credit report that day." (Docket # 45 at 2). However, there is some discrepancy in Plaintiff's recitation of facts

---

[1] Mr. Cobb is an attorney with Turner, Coombs & Malone, the firm employed to collect the underlying debt owed by Plaintiff. The action regarding this debt collection took place in Jefferson Circuit Court.
[2] It is important to note that Plaintiff is not certain about the details surrounding this email. (Docket # 45 at 1 n.1). Specifically, Plaintiff notes that "Tri City Acceptance, Inc. has not provided a privilege log and therefore Plaintiff cannot state with certainty the date, time, or recipients of the email." (Id.).

2

as to when Byrd purportedly pulled the report, with mentions being made of both November 7, 2017 and November 9, 2017. (*See* Id. n.3). Plaintiff does note that he has "a good faith belief that Mr. Hardin emailed the instruction to pull his credit report to Ms. Byrd." (Docket # 45 at 2).

**Legal Standard**

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …." FED. R. CIV. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (*citing* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)). However, the scope of discovery is not unlimited. "On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Id. (*quoting* FED. R. CIV. P. 26(b)(2)(C)(iii)). The determination of "the scope of discovery is within the sound discretion of the trial court." Cooper v. Bower, No. 5:15-CV-249-TBR, 2018 WL 663002, at *1 (W.D. Ky. Jan. 29, 2018), *reconsideration denied*, 2018 WL 1456940 (W.D. Ky. Mar. 22, 2018) (*quoting* Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981)).

Privileged documents fall outside of the scope of discovery. FED. R. CIV. P. 26(b)(1). The burden of establishing that a privilege exists to shield a document from discovery rests on the party asserting the privilege. Cardinal Aluminum Co. v. Continental Casualty Co., Case No.

3

3:14-CV-857-TBR-LLK, 2015 WL 4483991, at *2 (W.D. Ky. July 22, 2015). Here, Defendants bear that burden. In re Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983).

Plaintiff pled claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b, 1681n, and 1681o. (Docket # 1-2 at 5-6), which are the only surviving claims in this action. (*See* Docket # 13). Since these claims are grounded in federal law, the Court will apply federal common law in reviewing the applicability of the privilege. FED. R. EVID. 501; Swidler & Berlin v. United States, 524 U.S. 377, 403 (1998

The attorney-client privilege serves to protect from disclosure "confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client. Ross v. City of Memphis, 423 F.3d 596, 600 (6th Cir. 2005) (*quoting* In re Grand Jury Subpoena (United States v. Doe), 886 F.2d 135, 137 (6th Cir. 1989) (additional citations omitted)). Claims of attorney-client privilege are "narrowly construed because [the privilege] reduces the amount of information discoverable during a lawsuit. Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp., 293 F.3d 289, 294 (6th Cir. 2002) (*citing* United States v. Collis, 128 F.3d 313, 320 (6th Cir. 1997)).

The Sixth Circuit has articulated the elements of the privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived.

Reed v. Baxter, 134 F.3d 351, 356 (6th Cir. 1998) (*citing* Fausek v. White, 965 F.2d 126, 129 (6th Cir. 1992). "The burden of establishing the existence of the privilege rests with the person asserting it. Tenn. Laborers Health & Welfare Fund at 294.

4

## Analysis

Plaintiff argues that the email "likely contains evidence bearing on the reason Ms. Byrd requested Mr. Clayton's credit report" and the contents will "also shed light on Byrd's mental state." (Docket # 45 at 3). To prove his claims, Plaintiff must show that Byrd "acted willfully or with reckless disregard for Mr. Clayton's rights, thereby establishing a willful violation under Section 1681n." (Id.). Plaintiff further argues that any claim of privilege is improper for five reasons: (1) the email does not fall within Kentucky Rule of Evidence 503 "because the email was not a 'confidential communication made for the purpose of facilitating the rendition of professional legal services to the client'"; (2) the crime/fraud exception applies; (3) Byrd waived the privilege "by partially disclosing the email communication in the collection notes and in her deposition"; (4) Byrd waived the privilege "by relying on the defense that she was relying on a 'court order,' which she understood could be the instruction of an attorney"; and (5) Byrd waived the privilege by "failing to object or raise the privilege in response to the discovery requests and by failing to provide a detailed privilege log." (Docket # 45 at 5-6).

Defendants Tri City and Byrd respond that the evidence sought is not relevant, and that Plaintiff's attempts at "seeking [Byrd's] privileged communications with her legal counsel can only be designed as a poorly attempted fishing expedition." (Docket # 47 at 7). Second, Defendants state that they "possess no such alleged email from November 7, 2017[3]." (Id.). Third, Defendants argue "any communications between Byrd, Tri City and their legal counsel in this context are privileged, and thus non-discoverable.

The Court agrees with Defendants. As an initial matter, Defendants assert that they do not possess such an email. (Docket # 47 at 9). Defendants assert that they have tendered all the

---

[3] Defendants' Response reads "November 7, 2019." The Court will assume that the date was meant to read "November 7, 2017".

documents in their collection file in response to Plaintiff's discovery requests. (Id.). A party cannot be compelled to produce information that it does not possess. Peavey v. Univ. of Louisville, No. 3:09-CV-00484-R, 2011 WL 1106751, at *7 (W.D. Ky. Mar. 23, 2011). If Defendants Tri City and Byrd withheld any documents based on claims of privilege, the Defendants should have provided a privilege log describing the withheld documents. Defendants claim no documents were withheld and thus, no privilege log was provided. (Docket # 47 at 14). However, Plaintiff is entitled to assurances that the Defendants have worked to verify that these documents are not within their possession or do not exist. Peavey, 2011 WL 1106751, at *7. Defendants must, if they have not already done so, provide a verification that they have produced the relevant responsive documents within their possession. Additionally, they must provide a privilege log of any documents withheld on the basis of privilege, which describe the documents withheld, and the basis for the withholding.

Even if the email does exist, based on the information currently before the Court, it is protected from disclosure by the attorney-client privilege. Defendants have met the burden of showing that communications between Byrd and Hardin, within this context, would be covered by the privilege. Byrd communicated with Hardin, after she was noticed for a deposition in underlying litigation, which included a request to produce the credit report. (Docket # 47). Defendant Byrd sought legal advice, from Hardin, acting in his capacity as her employer's (and thus, her) counsel, regarding the deposition, and her obligations regarding production of the credit report. The elements of the privilege are met.

Further, Plaintiff has not presented sufficient evidence that the crime-fraud exception to the attorney-client privilege is applicable. When a party asserts the crime-fraud exception to the attorney-client privilege, he or she bears the burden of demonstrating the applicability of that

exception. Durand v. Hanover Insurance Group, Inc., 244 F.Supp.3d 594, 613 (W.D. Ky. 2016) (*citing* United States v. Zolin, 491 U.S. 554, 568 (1989). A threshold showing must be made by the Plaintiff to defeat the privilege, a bare assertion of crime or fraud will not suffice. *See* Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343, 354 (1986) (*citing* Clark v. United States, 289 U.S. 1, 15 (1933).

Plaintiff has not carried that burden. Plaintiff states "Mr. Clayton has a good faith belief that Mr. Hardin emailed the instruction to pull [Plaintiff's] credit report to Ms. Byrd." (Docket # 45 at 2). However, a good faith belief, alone, is not enough. Further, Plaintiff cites no authority for this assertion other than Kentucky Rule of Evidence 503(d), which concerns Kentucky's version of the exception. As discussed above, federal common law controls the applicability of privilege in this case, not state law. *See* FED. R. EVID. 501; Swidler & Berlin v. United States, 524 U.S. 377, 403 (1998).

Plaintiff's remaining arguments are likewise easily swept aside. He provides no support for his arguments that Defendant Byrd waived privilege through her discovery responses. Again, a bare assertion, without supporting mandatory authority, does not suffice to rebut the privilege.

**Conclusion**

For the reasons discussed above, Plaintiff's Motion to Compel Production of November 9, 2017 Email (Docket # 45) is **DENIED**.

Lanny King, Magistrate Judge
United States District Court

November 6, 2019