UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:18-CV-00308-DJH-LLK

CHRISTOPHER CLAYTON                                                                      PLAINTIFF

v.

TRI CITY ACCEPTANCE, INC. *et al*                                                    DEFENDANTS

## OPINION AND ORDER

Judge David J. Hale referred this matter to Magistrate Judge Lanny King for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. (Docket # 4).

On September 16, 2019, Judge King conducted a telephonic status conference in this case regarding multiple discovery disputes. (Docket # 43). On September 27, 2019, Defendants Tri City Acceptance, Inc. (Tri City) and Betty Byrd filed a Motion to Compel. (Docket # 46). Plaintiff Christopher Clayton filed a Response on October 9, 2019. (Docket # 50). Fully briefed, this matter is now ripe for adjudication.

For the reasons discussed below, the Motion to Compel (Docket # 46) is **GRANTED**, to the extent that Plaintiff shall produce a copy of the settlement agreement between himself and Turner, Coombs & Malone ("TCM"), and submit to a deposition conducted by Defendants Tri City and Byrd on the settlement agreement and mediation associated with it, unless the Court grants a protective order on motion of TCM.

### Background

This matter arises out of a suit, filed originally by Plaintiff Clayton in Jefferson County Circuit Court, and later removed to this Court. Plaintiff alleges Defendants Tri City and Byrd

1

"unreasonably intruded upon [his] privacy and seclusion" when they "divulge[ed] [his] private financial and credit information to third[]parties . . . and the public at large [] by providing a copy of [his] Trans Union report during [Byrd's] deposition and testifying about the contents of the credit report on the record." (Docket # 7 at 3). He further alleges that Defendants obtained and used the report without a permissible purpose with a willful, or at least negligent, state of mind, creating noncompliance with the FRCA, 15 U.S.C. §§ 1681b, 1681n, and 1681o. (Id., at 4-5).

On August 9, 2019, Defendants Tri City and Byrd issued a Notice of Video Deposition of Plaintiff Clayton, to be taken on August 20, 2019. (Docket # 46-1). On August 19, 2019, Plaintiff Clayton provided his written responses to the requests for production attached to the Notice of Deposition. (Docket # 46-2). Defendants describe all of Plaintiff's responses as "deficient" but focus their Motion to Compel on a single response to request for production no. 4. (Docket # 46 at 2). This request asks for "copies of all settlement agreements, and related documents, arising from the settlement of the Plaintiff's lawsuit with TCM in Jefferson Circuit Court Case No. 16-CI-000087." (Docket # 46-1 at 6). Defendants refer to a Jefferson Circuit Court Case, in which Mr. Clayton brought suit against the law firm of Turner, Coombs, and Malone for violations of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692. (hereinafter "TCM case"). The suit ended in January 2018, with a settlement agreement. (Docket # 50 at 3).

Plaintiff's deposition took place on August 20, 2019. (Docket # 46 at 2). Tri City and Byrd allege that Plaintiff's counsel instructed Plaintiff not to answer multiple questions which requested non-privileged information, attempted to coach his client, and otherwise instructed his client not to answer questions about the mediation and settlement agreement in the TCM case. (Id.). Specifically, Defendants allege that Plaintiff has placed the contents of this settlement agreement

in the TCM case into issue in the present litigation, and is required to produce it. (Docket # 46). Plaintiff disagrees. (Docket # 50).

**Legal Standard**

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …." FED. R. CIV. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (*citing* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)). However, the scope of discovery is not unlimited. "On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Id. (*quoting* FED. R. CIV. P. 26(b)(2)(C)(iii)). The determination of "the scope of discovery is within the sound discretion of the trial court." Cooper v. Bower, No. 5:15-CV-249-TBR, 2018 WL 663002, at *1 (W.D. Ky. Jan. 29, 2018), *reconsideration denied*, 2018 WL 1456940 (W.D. Ky. Mar. 22, 2018) (*quoting* Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981)).

Federal Rule of Civil Procedure 30 governs oral depositions. A party must obtain leave of Court, consistent with Rule 26(b)(1) and (2) to depose a deponent who has previously been deposed in the case. FED. R. CIV. P. 30(a)(2)(ii). Rule 30 further provides that the party seeking a deposition may attach a subpoena duces tecum, designating materials for production at the

3

deposition. FED. R. CIV. P. 30(b)(2). This notice must be accompanied by a request for production, which is governed by Federal Rule of Civil Procedure 34.

Federal Rule of Civil Procedure 33 governs interrogatories while Rule 34 governs requests to produce. Rule 33(b)(3) requires the responding party to answer each interrogatory "to the extent it is not objected to." FED. R. CIV. P. 33(b)(3). Similarly, Rule 34(b)(2)(B) requires a response to a document request to "either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons," and Rule 34(b)(2)(C) requires "[a]n objection to part of a document [request] must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(B), (C). Federal Rules of Civil Procedure 33 and 34 are structured such that, in combination with Rule 26(g)(1), both the requesting party and the court may be assured that *all* responsive, non-privileged materials are being produced, except to the extent a valid objection has been made. Heller v. City of Dallas, 303 F.R.D. 466,487 (N.D. Tex. 2014) (*citing* Evans v. United Fire & Cas. Ins. Co., 2007 WL 2323363 at *1, *3 (E.D. La. Aug. 9, 2007) (emphasis in original)). Federal Rule 33 requires that objections be made with specificity. Janko Enterprises, Inc. v. Long John Silver's, Inc., 2013 WL 5308802 at *7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported 'boilerplate' objections are clearly improper.").

If a party fails to answer an interrogatory submitted under Rule 33 or a request to produce submitted under Rule 34, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. FED. R. CIV. P. 37(a)(2)(B). Pursuant to Rule 37 of the Federal Rules, "a party may move for an order compelling disclosure or discovery," provided that the party certifies to the Court that it has, in good faith, conferred or attempted to confer with the person or party failing to make disclosure

or discovery in an effort to obtain it without court action. FED. R. CIV. P. 37(a)(1); *see* id. at (a)(3)(B)(iii)-(iv) (providing that a party may move to compel answers to interrogatories submitted under Rule 33 or to compel an inspection requested under Rule 34). The party who files a motion to compel discovery "bears the burden of demonstrating relevance." Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790 at *3 (W.D. Ky. June 28, 2016).

**Analysis**

*The Settlement Agreement*

Defendants Tri City and Byrd contend that not only is the settlement agreement between Clayton and TCM relevant to the case at bar, but that Plaintiff himself has made it relevant, by incorporating it into his claims for damages. (Docket # 46 at 4-5). Specifically, Clayton has filed a sworn declaration as an attachment to his Response to the pending Motion for Summary Judgment filed by Defendants, that states the following:

> 10. During the litigation of my case against Turner, Coombs & Malone, Betty Byrd and Tri-City requested and obtained a copy of my credit report from Trans Union, LLC on or about November 9, 2017. The report contained my personal information, including social security number, accounts, derogatory items including collections, payment histories, and a list of 'inquiries.'
> 11. The attorney for Turner, Coombs & Malone, J. Alan Cobb, presented my credit report during a mediation that occurred on December 19, 2017. Also present at the mediation were Judge James Shake (ret.), mediator and Asa P. "Pete" Gullet, III, a claims adjuster for Lawyers Mutual Insurance Company of Kentucky. During the mediation, Mr. Cobb used the credit report in connection with a Power Point presentation.
> 12. It is my belief that based on the circumstances, Mr. Cobb used the credit report before, during and after the mediation to gain a tactical advantage in the settlement discussion, discredit me, embarrass and humiliate me, harm my reputation, and to unfairly pressure me to settle my dispute.
> 13. It is my belief that based on the circumstances, Betty Byrd and Tri-City requested, obtained, and then gave my credit report to the attorneys for Turner, Coombs & Malone so that they could use it to discredit me, embarrass and humiliate me, harm my reputation, and to unfairly pressure me to settle my dispute.

5

> 14. As a result of Betty Byrd's and Tri-City's request, acquisition, use, and publication of my Trans Union credit report, I suffered and continue to suffer embarrassment, emotional distress, anxiety, loss of privacy, worry, stress, shame, humiliation, loss of self-esteem and self-worth, hopelessness, despair, lethargy, racing thoughts, and nervousness.
> 15. Additionally, I believe that the mediation of December 19, 2017 was unsuccessful because of Tri-City and Betty Byrd's publication of the credit report. The disclosure of the report unfairly pressured me to later resolve the case against Turner, Coombs & Malone and diminished my bargaining power to negotiate for a fair resolution of that litigation. (Docket # 28-1 at 2-3; Docket # 46-3 at 2-3).

This declaration, sworn to by Plaintiff, alleges various harms stemming from the actions of Tri City and Byrd in disclosing Plaintiff's credit information.

Plaintiff responds that the information contained in the settlement agreement is not relevant. He contends that, as the cases "involved different facts and resulted in different damages," the information in one is not relevant to the other. (Docket # 50 at 4). Further, Plaintiff states that "no right of indemnification exists under the Fair Credit Reporting Act, 15 U.S.C. § 1681." (Id.).[1] "Thus, any claimed damages caused by TCM's use of his credit report are irrelevant to his claims against Tri City." (Id.).

The Court finds that Plaintiff Clayton has placed the contents of the settlement agreement into issue. Clayton has alleged a litany of emotional harms, which he purportedly suffered, in part, because of the actions of Defendants Tri City and Byrd. (Docket # 28-1 at 2-3; Docket # 46-3 at 2-3). Specifically, he alleges, that at least in part, the Defendants actions caused him to accept a lessened settlement in the TCM case. (Id.). Plaintiff has clearly placed the contents of

---

[1] Plaintiff is correct, insofar as his observation that multiple district courts have found that there is no right to offset or contribution under the FCRA. See e.g. Brim v. Midland Credit Management, Inc., 795 F.Supp.1255, 1265-66 (N.D. Ala. 2011) (There is no right of offset or contribution under the FCRA); Nelson v. Equifax Information Services, LLC, 522 F.Supp.2d 1222, 1239 (C.D. Cal. 2007) (no equitable offset available under the FCRA); Kay v. First Continental Trading, Inc., 966 F. Supp. 753, 754–55 (N.D. Ill. 1997) (right to contribution for violations of FCRA is matter of federal law; contribution not an available remedy); Irwin v. Mascott, 94 F.Supp.2d 1052, 1058 (N.D. Cal. 2000) (no express or implied right to contribution or indemnification under Fair Debt Collection Practices Act).

the settlement agreement into relevance by asserting these facts in his pleadings. Specifically, it appears the Plaintiff has alleged and seeks to claim, compensatory damages for emotional harms suffered, as well as punitive damages for the purported violations of the FCRA. Both types of damages are permissible under the FCRA. <u>Boggio v. Federal Sav. Bank</u>, 696 F.3d 611, 615 (6th Cir. 2012); <u>Bach v. First Union Nat. Bank</u>, 486 F.3d 150, 152 (6th Cir. 2007); *see also* 15 U.S.C. §§1681-1681x.

Sixth Circuit precedent supports a finding of relevance. In <u>Ensing v. Vulcraft Sales Corp, a Div. of Nucor Corp.</u>, the U.S. District Court for the Western District of Michigan found that a settlement agreement entered into by employee with a third party was admissible for purposes of trial. 830 F.Supp. 1017, 1019-20 (W.D. Mich. 1993). While the <u>Ensing</u> Court evaluated the settlement agreement for purposes of admissibility at trial, the logic underlying the opinion applies to the matter at hand. The Court noted that the settlement agreement might pose risk of prejudicial harm to the employee, but the evidence of the agreement was relevant to show the employee's motivation for not obtaining new employment. <u>Id</u>.

Given the fact that such damages may be awarded for violations of the FCRA and that Plaintiff has stated his intent to seek them, such actions that may or may not warrant their award are likely relevant to the litigation. If Plaintiff alleges that he was put in a compromised position of accepting an unfair settlement in the underlying TCM case based on the actions of Tri City and Byrd, then the contents of that agreement would be relevant to such a determination. Tri City and Byrd are entitled to discovery of this document, at the very least, to understand the case

they must defend against.[2] Much like in Ensing, the relevance of the agreement, particularly because its use by Plaintiffs in their pleadings, is apparent.

The Court finds that the settlement agreement between Plaintiff Clayton and Turner, Coombs & Malone is relevant to the current litigation, specifically, as to the damages purportedly suffered by Plaintiff because of the purported disclosure of the credit report information by Defendants Tri City and Byrd. Therefore, the Court **GRANTS** Defendants' Tri City and Byrd's Motion to Compel production of the settlement agreement. (Docket # 46).[3]

*Plaintiff's Deposition Testimony*

Defendants Tri City and Byrd seek leave of Court to re-take Plaintiff Clayton's deposition to examine the mediation and settlement agreement in the context of the claims. (Docket # 46 at 12). The Defendants request their costs and expenses for filing this Motion and deposing Plaintiff, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). (Id. at 12-13). In support of their argument, Defendants argue that Plaintiff has placed the mediation and settlement agreement into issue and that "Clayton's refusal to produce the settlement agreement and testify about the mediation is not justified." (Id. at 13). Additionally, Defendants argue that the communications with Turner, Coombs & Malone that an avenue for waiver of confidentiality of the agreement existed once Plaintiff placed the mediation and settlement agreement into issue, and that Plaintiff refused waiver, necessitating this Motion. (Id.; Docket # 46-5).

---

[2] Plaintiff's counsel seems to agree that the settlement agreement is relevant. In his objections during the deposition, Plaintiff's counsel stated "I don't disagree that the settlement agreement is not relevant. I am suggesting that we can't talk about the contents of the settlement agreement because there's a confidentiality provision which prohibits Mr. Clayton from divulging information regarding that agreement. We'd have to have the Court's intervention to decide whether there needs to be a protective order in place for the confidentiality provision." (Docket # 46-4 at 4).
[3] It is important to note that the Court makes no determinations as to the admissibility of the settlement agreement at trial. Information need not be admissible to be discoverable. Information is within the scope of discovery if it is "relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

8

Plaintiff opposes the Motion, arguing primarily that the information sought is not relevant, and that any disclosure could expose Plaintiff to liability for breach of contract. (Docket # 50). Plaintiff also argues that this information would be inadmissible at trial. (Id.).

Federal Rule of Civil Procedure 30 governs use of depositions. The pertinent portion of the Rule for these purposes is Federal Rule of Civil Procedure 30(a)(2)(A)(ii). The Rule contemplates re-taking the deposition of an individual who was previously deposed, as would be the situation with Plaintiff. *See* FED. R. CIV. P. 30(a)(2)(A)(ii). A party may only take such a deposition with leave of Court. FED. R. CIV. P. 30(a)(2). The Court has wide discretion in determining whether to grant, and to what extent to allow, protection from discovery. Galella v. Onassis, 487 F.2d 986, 997 (S.D.N.Y. 1973) (*citing* Chemical & Industrial Corp. v. Druffel, 301 F.2d 126, 129 (6th Cir. 1962).

Defendants' arguments regarding the need for another deposition of Plaintiff are well-taken. As discussed above, Clayton has placed the contents of his settlement agreement and the mediation into issue, necessitating further examination of the topic. Such a deposition is within the bounds of the relevance standards of the Federal Rules. The Defendants may take appropriate discovery on the issue regarding Plaintiff's positions on the claims asserted, particularly, that he was harmed by the disclosure of his credit report at the mediation.

The Eastern District of Tennessee contemplated a similar situation in Mullins v. United States, 201 F.R.D. 629 (E.D. Tenn. 2002). Therein, the United States argued that it was entitled to a protective order barring a corporate deposition of the Internal Revenue Service, sought by taxpayers, on the ground that the information sought was not within the bounds of relevance. Id. at 630-31. The taxpayers sought the deposition to challenge the assertions of the United States with regard to their claims. Id. The case is much the same here. Defendants seek a deposition to

discover relevant evidence challenging Plaintiff's claims of harm. As was the case in Mullins, the Defendants "should be allowed to adduce evidence in order to establish their contention that the assessment was erroneous." Id.

However, the Court does not agree that sanctions are warranted at this time. Defendants shall be permitted to re-take the deposition of Plaintiff, but the Court will not award costs for this Motion or the deposition. The Court **GRANTS** Defendants' Motion, to the extent that Plaintiff Clayton must sit for a deposition regarding the mediation and settlement agreement in the underlying TCM case. (Docket # 46).

*The Confidentiality Provision*

While Plaintiff Clayton has waived confidentiality by placing the contents of the settlement agreement into issue, the Court does have concerns regarding the rights of TCM regarding disclosure. While the Court does not have the exact language of the agreement, there is evidence indicating TCM may waive any confidentiality rights (*See* Docket # 46-5). However, TCM must be given an opportunity to object to the production of the agreement.

Further, unless the Court grants TCM a protective order and prevents the disclosure of the agreement, the agreement shall be produced subject to this Court's Order that the agreement be produced only used only for purposes of this litigation and shall not be disclosed to anyone not associated with this litigation.

This Court has not addressed a similar circumstance directly, but other district courts have addressed facts wherein a third-party's rights were touched upon by waiver of a confidentiality agreement in adjacent or subsequent litigation. The general flavor of the case law shows that public access to court filings is presumed, but in cases involving similar agreements, these agreements should be produced under a protective order, for which good cause must be

shown. Kidd v. Thomson Reuters Corporation, 299 F.Supp.3d 400, 409 (S.D. N.Y. 2017) (*citing* United States v. Wells Fargo Bank, NA, Case No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D. N.Y. June 30, 2015) (internal citations omitted) ("[T]he mere fact that information is subject to a confidentiality agreement between litigants is not a valid basis to overcome the presumption in favor of public access to judicial documents); *See also* Norris v. Ford Motor Credit Co., 198 F.Supp.2d 1070, 1073-74 (D. Minn. 2002) (awarding liquidated damages to party for failure to file confidential settlement agreement with third-party under seal); Steele v. Trans Union, 2012 WL 32094, at *2 (S.D. N.Y. Jan. 5, 2012) (granting request to seal a confidential settlement agreement between Plaintiff and credit reporting agency).

The Court finds that a similar outcome is warranted.

## Conclusion

For the reasons described above, Defendants' Motion to Compel production of the settlement agreement in the TCM case is **GRANTED**:

(1) Defendants Tri City and Byrd's attorney shall forward a copy of this Order to Turner, Coombs & Malone. Within fourteen (14) days of receipt of this order, Turner, Coombs & Malone may file any objections it may have to production and a motion for protective order.

(2) Plaintiff is to provide a copy of the settlement agreement and related documents within seven (7) days after Turner, Coombs & Malone's period for filing of objections passes without objection, or after filing of a written waiver of objections.

(3) Plaintiff shall submit to a follow-up deposition to be conducted by Defendants Tri City and Byrd to address the mediation and settlement between Plaintiff and Turner, Coombs & Malone.

(4) The settlement agreement and any other documents produced pursuant to this Order shall be used only for purposes of this litigation. The settlement agreement and any other documents so produced shall not be disclosed to anyone not associated with this litigation.

**IT IS SO ORDERED.**

Lanny King, Magistrate Judge
United States District Court

November 6, 2019